OPINION OF THE COURT
Acosta, J.
At issue in this case is the propriety of the trial court’s decision to admit evidence of a different crime, under People v Molineux (168 NY 264 [1901]), where evidence of intent was not ambiguous (assuming the jury believed the complainant), and there was insufficient indicia of similarity to fall within the “common scheme or plan” exception. Defendant was charged with robbery in the second degree and related offenses in connection with a December 26, 2009 incident in which he allegedly sprayed complainant David Cushman in the face with mace, and stole a ring he had previously negotiated to purchase from *25 Cushman. On June 14, 2010, defendant was charged with grand larceny in the second degree and related offenses in connection with an incident in which he allegedly stole rings worth more than $90,000 from complainant Mary Nguyen by tricking her into placing the rings in a pouch and then replacing them with others before leaving the pouch with her. Over defendant’s objection, the court allowed the People to introduce evidence of defendant’s theft of Nguyen’s rings as Molineux evidence at defendant’s trial for the Cushman robbery. We find that the court erred in allowing Nguyen’s testimony to be admitted and that the error requires reversal and a new trial.
In 2007, David Cushman spent $30,000 on an engagement ring. When the engagement was called off, Cushman attempted to resell the ring to a jewelry store. Unsatisfied with the price he was offered, Cushman advertised the ring for sale on Craigslist in June 2009. Defendant responded to the ad, and after speaking on the phone with Cushman several times over the next two weeks, defendant asked Cushman to show the ring to him and his girlfriend. Cushman met defendant in a parking lot adjacent to the docks where defendant said his girlfriend kept her boat. Defendant and Cushman waited for defendant’s girlfriend for about 15 minutes, but she never showed up, and they left. Approximately two weeks later, defendant asked Cushman to meet him at Maimonides Hospital, where, defendant claimed, he was visiting his sick mother. Cushman arrived at around 7:30 p.m., but when defendant did not show up, Cushman left him a voicemail telling him to “leave [him] alone.”
In August 2009, defendant sent a text message to Cushman that he would have the money to buy the ring that week, but subsequently sent a message that he did not have the money. Finally, in December 2009, defendant contacted Cushman again about buying his ring, and promised to pay a non-refundable $3,000 deposit. Defendant asked Cushman to meet his “daughter” at a jewelry store to have the ring appraised. Cushman followed defendant into the vestibule of an apartment building. According to Cushman, while they waited for the elevator, defendant asked him if he had the ring. When Cushman removed the ring from a box, defendant maced Cushman in the face. As Cushman struggled to breathe, defendant pushed him against the wall, ripped the ring from his hand, and ran out the door. Cushman managed to grab onto defendant’s jacket outside and was able to subdue him until the police arrived.
According to defendant, however, it was Cushman who sprayed a substance into defendant’s eyes and then hit the top *26 of his head with a bat or some other blunt object. Police were called to the scene, where they separated the two men and arrested defendant.
Pursuant to the court’s Molineux ruling, Mary Nguyen testified that in mid-September 2009, she met with a man, who she said was defendant and who called himself “Joey,” to sell him her wedding rings. He told her that he was a jewelry dealer and that his mother was in the hospital. The two met around lunchtime in Nguyen’s apartment. About two weeks later, they met again at lunchtime in a restaurant. Defendant told Nguyen that his buyer for the rings would meet them at the restaurant, but nobody showed up.
About a week and a half later, defendant and Nguyen met again at the same restaurant. Nguyen’s boyfriend followed them to the restaurant and sat alone at the bar. A woman invited by defendant also attended the meeting, which lasted about half an hour. Defendant told Nguyen that he wanted to introduce her to his buyer as his girlfriend, and he asked to carry her rings in a zippered black pouch “to make it look really legitimate.” Nguyen gave defendant her rings, which he put in his pouch. In the restaurant, they met with another woman, and defendant showed the woman a diamond ring that was not Nguyen’s. A few minutes later, defendant excused himself to go to the bathroom, leaving his pouch on the table. When defendant sent her a text message saying that his stomach felt “awful,” Nguyen grabbed the pouch, which proved to contain pieces of costume jewelry, but not her rings. Nguyen’s boyfriend checked the bathroom, but it was empty. Nguyen called the police, but she never recovered her rings.
In its final charge, the court instructed the jury that the People contended that the evidence that defendant had stolen rings from Nguyen was “so similar” to the charged incident that it constituted a “common plan or scheme,” and that the evidence was “offered on the issue of defendant’s intent to steal in the instant case.”
It is well established that “[ejvidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past” (People v Alvino, 71 NY2d 233, 241 [1987]). Exceptions to the rule were established in People v Molineux (168 NY 264 [1901]; see People v Resek, 3 NY3d 385, 390 [2004] [“under our Molineux jurisprudence, we begin with the premise *27 that uncharged crimes are inadmissible and, from there, carve out exceptions”]). Molineux evidence must tend to establish a legally relevant and material issue, and its probative value must outweigh its potential prejudice to the defendant (Alvino, 71 NY2d at 242). At issue in this case are two of the exceptions addressed in Molineux: evidence offered on the issue of intent and evidence of “common plan or scheme” (160 NY at 297, 305).
Where intent is at issue but cannot be readily inferred from the commission of the act itself, evidence of prior criminal acts may be used to establish it (Alvino, 71 NY2d at 242). Where, however, proof of the act demonstrates that the defendant acted with the requisite state of mind, Molineux evidence should not be admitted {id.). Here, proof of defendant’s actions is sufficient to demonstrate that he acted with the requisite intent. Spraying someone in the face with mace, grabbing the person’s ring and running can only indicate an intent to steal the ring. If the jury believed Cushman’s testimony, then it would have to infer that defendant intended to steal the ring from him.
Citing to People v Ingram (71 NY2d 474 [1988]), the dissent correctly notes that Molineux evidence may be used “[w]hen defendant’s criminal intent cannot be inferred from the commission of the act or when defendant’s intent or mental state in doing the act is placed in issue (id. at 479 [emphasis added]). But as noted above, if the jury believed complainant’s version, defendant’s intent is obvious from the commission of the act. There is nothing in the way defendant did the act (assuming complainant’s version) that would place the intent to steal at issue. In this regard, I disagree with the dissent’s assertion that “the chain of events leading up to the robbery created ambiguities as to defendant’s intent” (dissenting op at 33). On the contrary, the People’s evidence left no ambiguity as to defendant’s intent.* As the dissent notes, “There is ample case law to support the proposition that uncharged crime evidence may be *28 used to support testimony that otherwise might be unbelievable or suspect” (dissenting op at 34, quoting People v Steinberg, 170 AD2d 50, 74 [1991], affd 79 NY2d 673 [1992]). However, that is not the case here.
Nor was Nguyen’s testimony admissible under the common plan or scheme exception, which requires that “there ex-istí 1 a single inseparable plan encompassing both the charged and the uncharged crimes” (People v Fiore, 34 NY2d 81, 85 [1974]). “There must be ‘such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations’ ” (id. [citation omitted]). Indeed, the Court of Appeals noted that “courts have been particularly cautious in permitting proof of uncharged criminal acts to establish a common scheme or plan” (id.). Evidence that is merely indicative of a modus operandi is not sufficient. “[A] modus operandi alone is not a common scheme; it is only a repetitive pattern” (id. at 87). What is generally required is evidence of “uncharged crimes committed in order to effect the primary crime for which the accused has been indicted” (id. at 85).
In this case, the similarities between the presently charged robbery of Cushman and the robbery testified to by Nguyen— that both incidents involved expensive jewelry listed on Craigslist and that phone conversations were had—evidence only “a repetitive pattern” (Fiore, 34 NY2d at 87). The alleged robbery of Nguyen was not committed to effect the robbery of Cushman (id. at 85).
The error in admitting Nguyen’s testimony was not harmless. Nguyen’s testimony comprised a significant portion of the People’s case. The prosecutor emphasized its significance in both his opening statement and his summation. For instance, in his opening, the prosecutor briefly summarized Cushman’s allegations and then told the jury that
“December 26, 2009 was not the first time that this defendant ran a scam on someone posting an ad on *29 Craig’s list [sic] for expensive jewelry. And so, another witness that I anticipate that you will hear from is Mary Nguyen.
“She will also walk you through her interaction with this defendant. Like a David Cushman experience, she placed on Craig’s list [sic] for the sale of her two expensive rings due to her impending divorce.”
The prosecutor then detailed the ways in which Nguyen’s alleged interactions with defendant were like David Cushman’s interactions with him, and introduced the theme that defendant was a person who committed multiple Craigslist scams.
In summation, the prosecutor argued:
“What the credible evidence shows is that on December 26th 2009, this defendant, right there, tried to swindle David Cushman out of his $35,000 engagement ring . . . Just like the swindle with Mary Nguyen, this defendant just so happened to bring fake jewelry with him on the day when he completed this crime after months of contact with David Cushman. Just like he swindled with [sic] Mary Nguyen, this defendant’s actions were planned, they were calculated, and they were morally . . . bankrupt.”
Later, he said:
“Perhaps the most compelling testimony that you heard of this defendant’s guilt came when Mary Nguyen testified before you. If you had any doubt whosoever [sic] that the defendant intended to steal David Cushman’s engagement ring on December 26th, 2009, certainly Mary Nguyen’s testimony makes very clear that this defendant scammed her the very same way he tried to scam David Cushman.”
The comment that “the most compelling testimony” as to defendant’s guilt'of the charged crime against Cushman was Nguyen’s testimony about an unrelated incident demonstrates that the prosecutor was well aware of the devastating nature of this evidence. Thus, notwithstanding the strength of the other evidence, it cannot be said that the error was harmless.
In view of our conclusion, we do not reach defendant’s remaining contentions.
*30 Accordingly, the judgment of the Supreme Court, New York County (Thomas Farber, J.), rendered February 8, 2011, convicting defendant, after a jury trial, of robbery in the second degree, and sentencing him to a term of 5V2 years, followed by five years’ postrelease supervision, should be reversed, on the law, and the matter remanded for a new trial.

 In People v Ingram (71 NY2d 474 [1988]) and People v Alvino (71 NY2d 233 [1987]), the defendants’ intent was ambiguous because, among other things, even accepting the People’s witnesses’ testimony as true, it was possible that the defendants were telling the truth (see also People v Mobley, 176 AD2d 211, 211 [1st Dept 1991] [“defendant’s own theory of the case was that proof of intent to steal. . . was equivocal”]). In People v Hernandez (71 NY2d 233 [1987]), decided with Alvino, where the defendant was charged with selling and possessing a controlled substance, “[e]vidence of uncharged crimes was legally admissible on the People’s case to prove that defendant possessed drugs because defendant’s possession of the drugs, standing alone, did not provide a clear indication of whether he held the drugs for sale or for his own use” (71 NY2d at 245). Uncharged crimes were also admissible on the sale *28 charges because, “[f]aced with the strong likelihood that the jury would infer from the evidence, and particularly his possession of 21 glassines, that he was a seller,” the defendant testified that he was a drug addict and a petty thief and introduced prior convictions to prove his defense that the glassines were for his personal use {id.). As the Court noted, “By doing so, he reframed the dispute before the court and affirmatively attempted to convince the jury of his innocence not just in this instance but because his entire history was inconsistent with guilt” {id. at 247). Thus, “[t]he People were entitled to rebut that testimony by evidence of prior crimes suggesting otherwise” {id.).